UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal No. 2:19-CR-00197 |
| v. | ) | |
| | ) | Section "D" |
| | ) | Judge Wendy B. Vitter |
| KHALID AHMED SATARY, | ) | |
| | ) | Magistrate (4) |
| Defendant. | ) | Magistrate Judge Roby |

**UNITED STATES' MEMORANDUM IN SUPPORT OF OMNIBUS MOTION
TO LIMIT OR EXCLUDE DEFENDANT'S PROPOSED EXPERT TESTIMONY**

**NOW INTO COURT** comes the United States of America, appearing through the undersigned Trial Attorneys, and respectfully submits this Memorandum in Support of Omnibus Motion to Limit or Exclude Defendant's Proposed Expert Testimony. The Defendant, Khalid Ahmed Satary ("Satary" or the Defendant) has given notice of his intent to introduce the following expert witness testimony at trial: (1) Dr. Paul Roepe, Ph.D. ("Dr. Roepe") to testify about the nature and function of cancer genetic ("CGx") testing; (2) Dr. Oren J. Mechanic, MD, MPH ("Dr. Mechanic") to testify about telemedicine, telehealth, and the integration of these concepts into the modern administration of health care; (3) Dr. Brian Kelly, Ph.D., DABCC, FAACC ("Dr. Kelly") to testify concerning the Satary laboratory operations, compliance with Medicare regulations generally, and the specific laboratory interactions with Medicare in this case; and (4) Thomas E. Herrmann, Esq. ("Mr. Herrmann") to testify about Medicare exclusions and their history and the lack of a Medicare exclusion of Satary's laboratories. [Doc. Nos. 278 and 288.] The testimony of Drs. Roepe, Mechanic, and Kelly should be limited, and the testimony of Mr. Herrmann should be excluded.

First, Dr. Roepe is not qualified to testify regarding Medicare's rules and regulations governing CGx testing. Dr. Roepe's testimony should be limited to background about CGx testing generally, and he should not be permitted to give opinions on the hypothetical usefulness of the CGx testing performed or the appropriateness of the billing of CGx testing to Medicare in this case.

Second, Dr. Mechanic is similarly not qualified to testify regarding Medicare's rules and regulations governing telemedicine. His testimony should be limited to background regarding telemedicine.

Third, Dr. Kelly's testimony should be limited. His offered testimony includes incorrect legal statements, testimony that is outside of his field of expertise, and fact testimony that would be impermissibly offered under the guise of expert testimony.

Finally, Mr. Herrmann's testimony should be excluded as wholly irrelevant to this trial.

## BACKGROUND

Satary was indicted on September 26, 2019. [Doc. No. 1.] The Indictment alleges conspiracies to commit health care fraud and wire fraud, pay and receive illegal kickbacks and bribes, and commit money laundering. Each conspiracy is connected to the claims billed to federal health care programs by the labs that Satary controlled for conducting cancer genetic testing, or "CGx" testing. As alleged in the Indictment, Satary orchestrated a conspiracy that resulted in approximately $547 million in fraudulent billings for CGx testing to Medicare and Medicare Advantage Plans between January 2017 and September 2019. [*Id.* at ¶ 40.]

On March 22, 2022, the Defendant filed a Notice of Anticipated Expert Witness Testimony ("Notice") pursuant to Fed. R. Crim. P. 16(b)(1)(C), noticing that he intends to call Dr. Roepe, Dr. Mechanic, and Dr. Kelly as expert witnesses. [Doc. No. 278.] Then, on April 14, 2022, Defendant

filed a Supplemental Notice of Anticipated Expert Witness Testimony ("Supplemental Notice"), noticing that he also intends to call Mr. Herrmann as an expert witness. [Doc. No. 288.]

### A. Notice of Defense Expert Dr. Paul Roepe, Ph.D.

In the Notice, the Defendant indicated that "[a]s a result of his extensive experience with cancer research and genetic analysis, Dr. Roepe is familiar with CGx testing, including the purposes of these tests, the clinical uses of these tests, and the medically appropriate uses of these tests." [Doc. No. 278 at 2.] The Defendant then provided a short summary of the proposed testimony to be offered by Dr. Roepe, such as:

- "Dr. Roepe will explain what cancer is."

- "Dr. Roepe will explain how CGx testing works, its accepted uses, and how CGx testing can be useful for both treatment and diagnostic purposes in beneficiaries with personal and family history or suspicion of cancer."

- "Dr. Roepe will testify that CGx testing is increasing physicians' ability to diagnose cancer and can be pivotal for identifying new molecular targets and determining the appropriate treatment choices for individuals with cancer."

- "Dr. Roepe will explain that specific types of CGx tests, like Next-Generation Sequencing (NGS), allow scientists to observe a tumor's genetic make-up. NGS allows a treating physician to identify what cellular processes have gone awry and to assess their impact on the patient. Knowing these processes is beneficial and can be lifesaving, because targeting the altered processes gives the treating physician the best opportunity to stop the mechanisms that are driving the tumor."

[Doc. No. 278 at 1-3.] The disclosure of Dr. Roepe does not mention Medicare's rules and regulations governing CGx testing.

### B. Notice of Defense Expert Dr. Oren J. Mechanic, MD, MPH

Next, the Defendant intends to call Dr. Mechanic to testify about telemedicine, telehealth, and the integration of these concepts into the modern administration of health care. [Doc. No. 278 at 3.] The Defendant provided a summary of the proposed testimony to be offered by Dr. Mechanic, such as:

3

- An "Overview of Telemedicine."

- "[H]ow telemedicine workflow is contemplated by healthcare organizations when considering various payers, such as Medicare."

- "Dr. Mechanic will explain general operational regulations regarding the use of telemedicine."

- "Dr. Mechanic will explain . . . the general requirements for a telemedicine visit . . . ."

- "Dr. Mechanic will apply his knowledge of telemedicine standards, and Medicare regulations regarding telemedicine, to the facts of this case."

- "Dr. Mechanic will answer hypothetical questions drawn from the facts of this case concerning how Medicare regulations and telemedicine standards are applied in different scenarios."

- "Dr. Mechanic will testify regarding exhibits and explain the telemedicine consultations conducted in this case."

[*Id.* at 4-5.] The offered basis for this testimony is not any experience of Dr. Mechanic with Medicare, but instead his "expertise in digital health innovation and telehealth. Dr. Mechanic has experience launching telehealth for a multi-specialty organization and has supported health startups as a mentor and advisor." [*Id.* at 3.]

      C.     **Notice of Defense Expert Dr. Brian Kelly, Ph.D., DABCC, FAACC**

Third, the Defendant intends to call Dr. Kelly to testify concerning "the Satary laboratory operations, compliance with Medicare regulations generally, and [] the specific laboratory interactions with Medicare in this case." [Doc. No. 278 at 5-8.] The Defendant's offered basis for Dr. Kelly's testimony is that "Dr. Kelly has been involved in test utilization studies at an academic medical center," and "as a Director of Medical Laboratories, Dr. Kelly is regularly involved with staff to achieve regulatory compliance." [*Id.* at 6-7.] Additionally, "Dr. Kelly is a named laboratory director on a CLIA certificate and has professional experience with laboratory test

4

utilization. In his independent consulting business, Dr. Kelly assists small to mid-size clinical laboratories in the implementation of liquid-chromatography, mass-spectrometry based analysis of biological specimens, among other methods, together with ongoing regulatory oversight." [*Id.*] The Notice does not reference any experience of Dr. Kelly with CGx testing or with Medicare's rules and regulations.

The Defendant's summary of the proposed testimony to be offered by Dr. Kelly includes:

- "Dr. Kelly will testify that the Medicare diagnostic testing regulations, to wit: 42 CFR §§ 410.32, 411.15(a)(1), defines 'treating physician' disjunctively. Under § 410.32(a) a physician who is treating the beneficiary is not limited to the physician who treats a beneficiary for a specific medical problem, and instead covers the physician who furnishes a consultation."

- "Dr. Kelly will testify that it is not up to the laboratory to determine medical necessity of the test ordered. Instead, determination of medical necessity is the responsibility of the consulting physician."

- "Dr. Kelly will testify that, if a laboratory receives a requisition form containing a physician's statement that he/she furnished a consult and that the test is medically necessary, the laboratory is justified in relying upon that statement to bill Medicare for the test."

- "Dr. Kelly will testify that Medicare has thousands of rules and regulations, which are subject to frequent change. There is no one single place for an individual to find all Medicare regulation: these rules and regulations are in the Code of Federal Regulations, national and local coverage determinations, and administrative guidance."

- "Dr. Kelly will testify that Medicare does not provide notice when a rule or regulation is changed."

- "Dr. Kelly will testify that, while Medicare does not review every claim before the claim is paid, Medicare does have a host of tools available to conduct such reviews, including pre-payment reviews, post-payment audits, etc."

- "Dr. Kelly will testify that rules and guidance regarding how labs can pay sales representatives and distributors changed constantly during the time period alleged in the indictment and significant confusion permeated the industry concerning what was allowed."

5

- "Dr. Kelly may discuss the types of common financial arrangements between clinical labs and sales representatives during the relevant time period."

- "Dr. Kelly will testify that laboratories do not set the reimbursement rates for CGx tests. Rather, Medicare sets the reimbursement rate and there is nothing that a laboratory can do to change what they are paid for a specific test."

- "Dr. Kelly will review exhibits, specifically example claim forms that were sent to Medicare by the labs and testify that there was no factually false information on the forms billed to Medicare. Dr. Kelly will testify that the laboratory claim forms presented accurate information to Medicare when requesting payment."

- "Dr. Kelly will discuss the Palmetto MOLDX program (https://www.palmettogba.com/moldx)."

[Doc. No. 278 at 7-8.]

### D. Notice of Defense Expert Thomas E. Herrmann, Esq.

Finally, in the Supplemental Notice, the Defendant indicated that the basis for Mr. Herrmann's testimony is that he has "extensive experience with Medicare compliance regulations and operations [and] is familiar with the Medicare exclusions, including the statutory and regulatory bases for these exclusions." [Doc. No. 288 at 1-2.] The Defendant then provided the following summary of the proposed testimony of Mr. Herrmann:

- "Herrmann will explain the statutory basis and regulatory criteria for Medicare exclusions."

- "Herrmann will explain the mandatory and permissive Medicare exclusion categories and what those categories cover."

- "Herrmann will explain the history of the Medicare exclusions."

- "Herrmann will explain and elaborate upon the Office of the Inspector General's May 8, 2013 advisory bulletin on the effect of exclusion from participation in Federal Health Care Programs."

- "Herrmann will testify that Satary received no notice that he was excluded from Medicare and did not receive an exclusion letter."

6

- "Herrmann will testify that Satary was not subject to mandatory exclusion from any Federal health care programs."

## LEGAL STANDARDS

### A. Rule 702 and *Daubert*

With respect to expert testimony, the district courts act as "gate-keepers" to ensure that such testimony is "relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("Rule 702 charges trial courts to act as 'gate-keepers' . . . [for] all types of expert testimony") (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993)). Federal Rule of Evidence 702, as amended in 2000, codified the Supreme Court's holding in *Daubert*. It reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

To demonstrate testimony's relevance, the proponent must show by a preponderance of the evidence that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015) (quoting *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003)) (holding that an expert's reasoning or methodology must be properly applicable to the facts in issue).

### B. Rule 703 Limits Expert Testimony on Inadmissible Hearsay Evidence

When expert testimony can be admitted, Rule 703 allows that person to introduce opinions (which satisfy the rules discussed above) that are based on otherwise inadmissible evidence if such

evidence is reasonably relied on by experts in the field. Fed. R. Evid. 703. However, the inadmissible evidence on which the opinions are based should not be disclosed to the jury unless the proponent of disclosure can show that its "probative value [is not] substantially outweigh[ed] [by its] prejudicial effect." *Id.* "Courts . . . must serve a gate-keeping function with respect to Rule 703 opinions to ensure 'the expert isn't being used as a vehicle for circumventing the rules of evidence.'" *Factory Mut. Ins. Co. v. Alon USA*, 705 F.3d 518, 524 (5th Cir. 2013) (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992)). Rule 703 generally does not countenance introduction of otherwise inadmissible hearsay. *See id.* ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.") (internal quotation marks omitted).

    **C.**    **Expert Testimony Must Be Probative and Not Unfairly Prejudicial or Confuse the Issues Under Rule 403**

"Finally, if an expert's testimony survives the threshold scrutiny under Rule 702, it is subject to further review under Rule 403." *Graves ex rel. W.A.G. v. Toyota Motor Corp.*, No. 2:09CV169KS-MTP, 2011 WL 4590768, at *5 (S.D. Miss. Sept. 30, 2011). Rule 403 also applies to expert testimony and permits the exclusion of even relevant testimony "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. The Supreme Court instructed in *Daubert* that "a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules," including Rule 403, which permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of" among other things, "confusing the issues" or "misleading the jury." *Daubert*, 509 U.S. at 595 (quoting Fed. R. Evid. 403). Because "[e]xpert evidence can be both powerful and quite misleading . . . the judge in weighing possible prejudice

8

against probative force under Rule 403 [should] exercise[ ] more control over experts than over lay witnesses." *Id.* To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## ARGUMENT

**A.    Dr. Roepe's proposed testimony should be limited to background regarding CGx testing.**

Defendant seeks to call Dr. Roepe to "discuss cancer generally, and to inform the jury of the nature and function of CGx genomic testing," including "how CGx testing can be useful for both treatment and diagnostic purposes in beneficiaries with personal and family history or suspicion of cancer." [Doc. No. 278 at 2.] While the government does not take issue with Dr. Roepe testifying regarding "the nature and function of CGx genomic testing," he is not qualified to testify regarding Medicare rules and regulations, and his proposed testimony about the abstract "usefulness" of CGx testing would confuse the issues.[1]

Dr. Roepe is a chemistry professor. His academic publications mostly pertain to drug resistance in malaria—a topic far afield from the facts of this case. Dr. Roepe's prior expert testimony has been in patent-related cases.

Dr. Roepe's proposed testimony should be limited to background on CGx testing. Defendant is charged with defrauding the Medicare program of hundreds of millions of dollars by knowingly billing for CGx testing that did not meet its coverage requirements and submitting claims that were tainted by kickbacks. [*See* Doc. No. 1 (Indictment) at ¶¶ 22-25 (describing Medicare's rules governing reimbursement for CGx testing), ¶¶ 39-40 (alleging that Defendant

---

[1] In contrast to Dr. Roepe, the government noticed an expert to testify regarding "Medicare's coverage for laboratory testing" and an expert to testify regarding whether the CGx testing in this case was "medically appropriate." [Doc. No. 263 at 3-11.]

9

caused the submission of claims to Medicare for CGx testing that was medically unnecessary).] Nowhere in Defendant's expert disclosure does he state that Dr. Roepe will discuss what *Medicare* considered to be appropriate CGx testing, which is one of the central issues in this case.

Additionally, Defendant's attempt to introduce the potential "usefulness" of CGx testing generally, untethered from Medicare's coverage requirements, would be aimed at introducing "good acts," which courts routinely exclude. *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *United States v. Crinel*, Crim. No. 15-61, 2016 WL 5363091, at *2-3 (E.D. La. Sept. 26, 2016) (excluding evidence of good acts in health care fraud case). Any testimony that the CGx tests were hypothetically beneficial would confuse the issues and thus should be excluded under Rule 403. [*See, e.g.*, Doc. No. 278 at 1 (Dr. Roepe will explain "how CGx testing can be useful").] Moreover, discussion of the potential usefulness of CGx testing in the general population would not only distract from the actual issues in this case, but would also serve to invoke the passions of the jury, aimed at jury nullification. *See Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *see also United States v. Paradies*, 98 F.3d 1266, 1285-86 (11th Cir. 1996) (defendant may act with requisite knowledge, willfulness, or specific intent even if he believed "that ultimate good would result from [his] conduct").

For these reasons, Dr. Roepe's testimony should be limited to background testimony about CGx testing generally, and he should not be permitted to give any opinions on the general usefulness or appropriateness of the CGx testing in this case.

> B. **Dr. Mechanic's testimony should be limited to background regarding telemedicine.**

Next, Defendant intends to offer Dr. Mechanic to "discuss telemedicine, telehealth, and the integration of these concepts into the modern administration of healthcare." [Doc. No. 278 at 3.] Additionally, "Dr. Mechanic will testify to the physician-patient visit as performed by telemedicine providers, financial arrangements with the providers, and the Medicare and operational regulations applicable to the telemedicine structure in this case." [*Id.*]

Dr. Mechanic teaches and practices emergency medicine. He often writes and lectures on telemedicine, but mostly in the context of the COVID-19 pandemic, which post-dates the allegations in this case. None of his articles appear to discuss Medicare's rules and regulations applicable to telemedicine. Nor do they discuss the prescribing of CGx testing through telemedicine. The government is not aware of any cases in which Dr. Mechanic has been qualified as an expert.

The Indictment charges Defendant with orchestrating a scheme to obtain DNA samples from Medicare beneficiaries for CGx testing that was not ordered by health care providers who were treating the beneficiaries for whom the tests were ordered. [Doc. No. 1 (Indictment) at ¶¶ 39, 42.] Defendant allegedly paid kickbacks and bribes to purported telemedicine companies induce the fraudulent ordering of CGx tests by doctors who did not conduct a patient visit or consultation via telemedicine. [*Id.* at ¶¶ 40-42.] The Indictment describes Medicare's specific rules and regulations governing coverage of telemedicine. [*Id.* at ¶¶ 26-29.]

The government does not challenge Dr. Mechanic's qualifications in the area of telemedicine generally. But Dr. Mechanic does not appear to be qualified as an expert to testify regarding "Medicare regulations" on telemedicine. [Doc. No. 278 at 4-5.] The Fifth Circuit "require[s] that a witness's qualifying training or experience, and resultant specialized knowledge,

11

[be] *sufficiently related* to the issues and evidence before the trier of fact [such] that the witness's proposed testimony will help the trier of fact." *Macy v. Whirlpool Corp.*, 613 F. App'x 340, 345 (5th Cir. 2015) (internal quotation marks omitted). "Stated another way, an expert may not go beyond the scope of his expertise in giving his opinion." *MGMTL, LLC v. Strategic Tech.*, No. CV 20-2138-WBV-MBN, 2022 WL 485279, at *6 (E.D. La. Feb. 17, 2022) (Vitter, J.) (granting in part motion to exclude expert from testifying on market for, and value of, a software application because expert's "knowledge of the government contracting industry" was not sufficient to qualify him "to testify as an expert on those topics").

Dr. Mechanic does not appear to have any professional background, experience, training, or education in Medicare's rules and regulations governing telemedicine, particularly those that pre-dated the COVID-19 pandemic and were in place during the timeframe at issue. [*See* Doc. No. 1 (Indictment) at ¶ 44 (charging conspiracy that spanned from January 2017 through September 2019).] Because testimony by Dr. Mechanic on "Medicare regulations regarding telemedicine" would be unreliable [Doc. No. 278 at 5], Dr. Mechanic's testimony should be limited to his field of expertise.

  **C.** **Dr. Kelly's testimony should be limited.**

Dr. Kelly's proposed testimony should be limited, for four reasons. First, some of his proposed testimony is legally incorrect. Second, some of his proposed testimony is outside of his area of qualification. Third, some of his testimony would be fact testimony of which Dr. Kelly has no personal knowledge. And fourth, Dr. Kelly should not be permitted to introduce testimony that blames Medicare, the victim in this case.

First, Defendant attempts to offer incorrect statements of law to the jury through Dr. Kelly. In particular, Dr. Kelly would testify that "it is not up to the laboratory to determine medical

necessity of the test ordered," and "if a laboratory receives a requisition form containing a physician's statement that he/she furnished a consult and that the test is medically necessary, the laboratory is justified in relying upon that statement to bill Medicare for the test." [Doc. No. 278 at 7.] To the contrary, when submitting claims to Medicare, the entity submitting the claims (here, the Satary labs) certifies that the claims were reasonable and medically necessary. As one court recently held in a criminal case involving CGx testing, courts have "ma[d]e clear that 'laboratories have a legal duty to ensure that they do not submit claims for medically unnecessary tests.'" *United States v. Patel*, No. 19-CR-80181-RAR, 2021 WL 2550477, at *9 (S.D. Fla. June 22, 2021) (quoting *United States v. Boston Heart Diagnostic Corp.*, 296 F. Supp. 3d 155, 166 (D.D.C. 2017)). Defendant should not be allowed to introduce incorrect legal standards through an expert, as such testimony would be unduly prejudicial and confuse the issues under Rule 403. *See Metrejean v. REC Marine Logistics, L.L.C.*, No. 08-5049, 2009 WL 3062622, at *2 (E.D. La. Sept. 21, 2009) ("[C]ourts generally do not permit experts to testify as to matters of domestic law in order to avoid confusing the jury with multifarious pronouncements on the law.").

Second, Defendant offers Dr. Kelly to testify regarding "the Satary laboratory operations" and "compliance with Medicare regulations generally" [Doc. No. 278 at 5], but Dr. Kelly does not appear to have any training or experience with the CGx testing conducted by the Satary labs or Medicare's rules and regulations governing CGx testing. The government is also not aware of any case in which Dr. Kelly has been qualified as an expert, nor identified any prior testimony where Dr. Kelly testified about the workings of CGx labs. Rather, Dr. Kelly's experience, highlighted in the Notice, and supported by his curriculum vitae, relates to work with labs in the urology, pharmaceutical, toxicology, and sports medicine fields. Any testimony on the workings and practices of CGx labs specifically should be excluded as Dr. Kelly does meet the "requirement that

13

the witness possess specialized expertise" to be able to testify about them. *See Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). And Dr. Kelly's proposed testimony on "compliance with Medicare regulations generally" as it pertains to CGx testing should likewise be excluded because it would be unreliable.

Third, Dr. Kelly's proposed testimony about "specific laboratory interactions with Medicare in this case" appears to be an effort by Defendant to put factual testimony in through an expert. [Doc. No. 278 at 5.] In this vein, Satary proposes that Dr. Kelly will "review exhibits, specifically claim forms that were sent to Medicare by the labs and testify that there was no factually false information on the forms billed to Medicare. Dr. Kelly will testify that the laboratory claim forms presented accurate information to Medicare when requesting payment." [*Id.* at 8.] Dr. Kelly has no knowledge of whether there was "factual false information" on the claim forms submitted by Satary's labs. For example, Dr. Kelly does not know and did not observe who solicited the beneficiaries to be tested, who signed the orders for testing, and which labs actually conducted the testing that was billed to Medicare. Such factual statements by a witness without personal knowledge should not be permitted.

Finally, Defendant offers Dr. Kelly to testify that Medicare has "a host of tools available to conduct . . . reviews" of claims, "including pre-payment reviews, post-payment audits, etc." [Doc. No. 278 at 7.] Dr. Kelly should be prohibited from opining that Medicare could or should have detected Satary's fraud scheme. It is "well-established that the 'perpetrator of a fraud may not defend himself by blaming the victim for being duped.'" *United States v. Coscia*, 2015 WL 6153602, at *1 (N.D. Ill. Oct. 19, 2015) (quoting *United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007)); *see also United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) ("The victim's negligence is not a defense to criminal conduct."). Defendants have specifically been precluded

in health care fraud cases from seeking to blame Medicare for failing to detect fraud. *See United States v. Ahmed*, No. 14-cr-227 (DLI), 2016 WL 8732355, at *3 (E.D.N.Y. June 24, 2016) (granting government's motion in limine to exclude "blame the victim" evidence where Medicare was victim in health care fraud case and explaining how analysis is the same as with other victims). Here, it is not relevant for the Defendant to argue that Medicare should have notified him that his claims were illegal or improper in any way. Nor is it appropriate for the Defendant to argue that he relied on the fact that Medicare paid inappropriate claims to develop a belief that other claims were allowed and appropriate.

        **D.     Mr. Herrmann's testimony should be excluded because it is wholly irrelevant.**

Finally, the Defendant intends to offer Mr. Herrmann as an expert to "discuss Medicare exclusions and their history," "explain how a person can become excluded from Medicare, the notice regulations for such exclusion, and . . . the statutory and regulatory criteria that must be established to exclude a person from the federal Medicare program." [Doc. No. 288 at 1.] Mr. Herrmann would also attempt to introduce statements of which he has no personal knowledge, on behalf of Satary. [*See id.* at 1-2 ("Herrmann will testify that Satary received no notice that he was excluded from Medicare and did not receive an exclusion letter.")]

The Court should exclude the testimony of Mr. Herrmann in its entirety, as it relates to an issue that is not relevant to the charges against the Defendant. *See Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 882 (5th Cir. 2013) ("Evidence is relevant if 'it has any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" (quoting Fed. R. Evid. 401(a)); *see also Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). As noted above, the Defendant is charged with defrauding the Medicare

15

program by knowingly billing for CGx testing that did not meet its coverage requirements and submitting claims that were tainted by kickbacks. The government has not alleged that the Defendant has been excluded from Medicare, nor is it relevant to the charged conduct.[2] In fact, the government is not aware of the Defendant having been excluded by Medicare during the relevant time period, which is precisely why this proposed testimony is irrelevant.

Mr. Herrmann's testimony should be excluded in its entirety because the Defendant has failed to show how in any way, let alone by a preponderance of the evidence, that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Kuhrt*, 788 F.3d at 419-20.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court limit the testimony of Dr. Roepe, Dr. Mechanic, and Dr. Kelly, and exclude Mr. Herrmann.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF LOUISIANA

JOSEPH S. BEEMSTERBOER
ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

By: /s/ *Justin M. Woodard*
JUSTIN M. WOODARD
ALEXANDER THOR POGOZELSKI
MICHAEL CULHANE HARPER
United States Department of Justice
Criminal Division, Fraud Section

---

[2] Perhaps Defendant is attempting to respond to the government's intent to introduce evidence that Defendant concealed his ownership of the labs when enrolling with Medicare, which allowed him to conceal his previous felony conviction from Medicare. [*See* Doc. No. 1 (Indictment) at ¶ 42(a); Doc. No. 237 at 4-5.] But that issue is wholly separate from any hypothetical exclusion of Defendant's labs from Medicare.

16

1400 New York Avenue, NW  
Washington, DC 20530  
Tel: (202) 262-7868  
E-Mail: Justin.Woodard@usdoj.gov

### **CERTIFICATE OF COMPLIANCE WITH LOCAL CRIMINAL RULE 12**

Pursuant to Local Criminal Rule 12, the Government conferred with counsel for Defendant, who advised that they oppose this motion.

### **CERTIFICATE OF SERVICE**

I, Justin M. Woodard, hereby certify that on May 16, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Justin M. Woodard*  
Justin M. Woodard  
Trial Attorney