UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal No. 2:19-CR-00197 |
| v. | ) | |
| | ) | Section "D" |
| | ) | Judge Wendy B. Vitter |
| KHALID AHMED SATARY, | ) | |
| | ) | Magistrate (4) |
| Defendant. | ) | Magistrate Judge Roby |

**JOINT MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S
MOTION FOR DETERMINATION THAT THE CRIME-FRAUD
DOCTRINE DEFEATS CERTAIN CLAIMS OF PRIVILEGE (DOC. 224)**

Defendant, Khalid Ahmed Satary ("Satary") and Third Parties Alpha Medical Consulting, Inc., Clio Laboratories, LLC, Elite Medical Laboratories, Inc., Performance Laboratories LLC, Lazarus Services, LLC, and GNOS Medical Inc., d/b/a Laboratory Experts (collectively, the "Labs") submit this joint memorandum of law in opposition to the Prosecution Team's Motion for Determination that Crime-Fraud Doctrine Defeats Certain Claims of Privilege (the "Prosecution Team's motion") (Doc. 224).

Before addressing the substance of the Prosecution Team's motion, it first must be noted that there is substantial overlap in the documents that the Prosecution Team seeks to pierce the attorney-client privilege via this motion and those that the Filter Team seeks to produce to the Prosecution Team in a motion filed under seal on August 24, 2021. Out of more than 25,000 assertions of privilege by Satary and the Labs, the Prosecution Team and the Filter Team both have somehow honed in on the same 251 documents. Such overlap cannot possibly be a coincidence.

The Prosecution Team is supposedly walled off from the Filter Team's actions, but their near-identical motions would suggest otherwise. Before even considering the merits of the

Prosecution Team's motion, this Court must investigate how the Prosecution Team arrived at its list of documents to pierce privilege that almost perfectly mirrors the Filter Team's list of privileged documents to produce to the Prosecution Team. This Court must ensure that the Prosecution Team did not directly or indirectly have access to the privileged documents at issue or knowledge as to their substance before filing this motion. A hearing is essential to getting to the bottom of this situation.

As to the merits of the Prosecution Team's motion, this Court should reject the Prosecution Team's arguments. The Prosecution Team's brief is full of threadbare speculation and conclusory leaps that do not satisfy the standard for piercing the sacrosanct attorney-client privilege. Satary is in an awkward and untenable position defending against this motion. The Prosecution Team (supposedly) does not know of the contents and substance of the documents at issue. And for Satary to provide a rebuttal as to each document would necessarily be giving the Prosecution Team an overview of the attorney-client communications and legal advice Satary has received—providing the Prosecution Team an advantage in its prosecution against him. While *in camera* review is unwarranted here, were the Court to review any document *in camera*, Satary can provide further information and explanation, under seal, as to that document and why the crime-fraud exception does not apply, if requested by the Court.

That being said, the Prosecution Team's arguments fail as a matter of law thereby rendering *in camera* review unnecessary. The Prosecution Team seeks to pierce the attorney-client privilege of both Satary and the Labs. But, the Prosecution Team's sole accusations of criminality—a necessary component for success in a crime-fraud motion—are directed at Satary, and not the Labs. The Prosecution Team relies on Satary's indictment as evidence of his alleged criminal violations. *Satary's* supposed criminal conduct cannot be used as the impetus to pierce the *Labs*'

2

attorney-client privilege. The Prosecution Team has wholesale failed to meet its burden to pierce the privilege for any of the individual Lab's communications, and the motion must be denied outright to the extent it seeks access to any document in which any of the individual Lab entities is the privilege holder.

Ultimately though, this Court should defer resolution of the Prosecution Team's motion until after resolving Satary's motion to suppress (Doc. 199) and the Labs' Rule 41(g) motion to return property (Doc. 201). There is no need for this Court to consider whether to pierce the attorney-client privilege over documents that the Government has unconstitutionally taken and retained in the first place.

## LEGAL ARGUMENT

**I.  This Court Must Investigate And Hold A Hearing to Assure Itself That The Prosecution Team Did Not Have Access to the Privileged Documents Before Filing This Motion.**

The Prosecution Team now moves to pierce the attorney-client privilege on 279 documents based on a theory that the crime-fraud exception applies. The Filter Team currently has a pending motion (under seal) seeking authorization to produce 273 documents to the Prosecution Team. Both of these requests originated from a review of more than 25,000 assertions of privilege by Satary and the Labs. Incredibly, despite a supposed wall of separation between the two teams, the same 251 documents are at issue in both the Prosecution Team's and the Filter Team's motions.

It bears emphasis that the Prosecution Team claims it has not seen these privileged documents and have not been told the substance of them; the Prosecution Team has supposedly made its crime-fraud motion based solely on the information provided in the privilege logs. Yet somehow, out of tens of thousands of privileged documents, the Prosecution Team has created a nearly identical list of documents as the Filter Team. The likelihood of this being a coincidence is implausible.

3

The Prosecution Team's exhibits include a number of documents that do not include Satary even though the Prosecution Team's stated theory is that Satary himself sought advice from counsel in furtherance of his alleged criminal conduct. How were these emails—which Satary was not a part of—selected for the Prosecution Team's motion?

Additionally, more than half of Exhibit B contains privilege log entries that contain only a file date, and no other metadata such as date or email sender or recipient.[1] (*See* Doc. 224-3 at 6-10). How can the Prosecution Team make a good-faith motion to invoke the crime-fraud exception based solely on a filename?

And the Prosecution Team not only alleged crime-fraud based on minimal information, but the Prosecution Team organized these documents into specific categories based on that minimal information. One particularly egregious example is the inclusion of a document simply titled, "CLIO Toxicology Training 2017.pptx," (Doc 224-4 at 15), in Exhibit C, which the Prosecution Team labels as dealing with cancer genetic ("CGx") testing and local coverage determinations ("LCDs"). How is a "toxicology" training PowerPoint related to diagnosis codes, LCDs, or ensuring that Medicare would pay for CGx testing? The Prosecution Team must provide a sufficient explanation as to why this toxicology training involves a crime and/ or a fraud as well as how and why it categorized this document titled "Toxicology Training" as dealing with CGx testing. Another startling example in Exhibit C is a document titled, "FW: Violation of the Telephone Consumer Protection Act." (Doc 224-4 at 8). No reasonable person would be able to draw an inference that would connect this document to the category designated by the Prosecution Team. Again, the Prosecution Team is supposedly identifying documents solely based on the

---

[1] The privilege logs were created based on metadata provided by the Filter Team. In the instances where a privilege log entity is missing metadata, that is how the document was presented by the Filter Team to Satary and the Labs for privilege review.

4

information in the privilege logs. How then is the Prosecution Team able to connect an allegation about a possible TCPA violation to CGx testing without having seen the contents of the email at issue? Unless of course, the Prosecution Team had more information about the substance of the documents beyond just the information in the privilege logs.

This Court must hold a hearing to determine whether the Prosecution Team had seen the privileged emails prior to making its motion or whether its members, directly or indirectly, had knowledge of the substance of the emails that helped guide them in bringing this targeted crime-fraud motion. *In re United States*, 878 F.2d 153, 157-58 (5th Cir. 1989) (explaining that an evidentiary hearing is the remedy available to ascertain whether the attorney-client privilege was breached and to determine the prejudice to the privilege-holder). *See, e.g.¸ United States v. Holy Land Found.*, No. 3:04-CR-240-G, 2007 WL 2011319, at *7 (N.D. Tex. July 11, 2007) (finding that "it is necessary to hold an evidentiary hearing to determine the extent to which the prosecutors have been tainted by having access to privileged communications"). Even if there was no intentional misconduct by the Prosecution Team, there would still be prejudice to Satary if the Prosecution Team had a forbidden peak behind the veil of attorney-client privilege.

The Court needs to ascertain how the Prosecution Team chose the documents at issue and whether the Prosecution Team saw the privileged documents or were told of the substance of the documents or directed in any way, even if by a non-member of the Prosecution Team. It is not out of the realm of possibility that a third-party, such as an agent who is neither a member of the Filter nor Prosecution Teams, somehow relayed information—whether intentionally or inadvertently—from the Filter Team to the Prosecution Team. Nor is it inconceivable that a member of the Prosecution Team was able to access information from the Filter Team as a result of insufficient IT protections put in place. Other courts have been very critical of the Department of Justice's

5

lack of proper training of its employees when dealing with confidential electronically seized information. *See United States v. Nejad*, 487 F. Supp. 3d 206, 211 (S.D.N.Y. 2020) (noting that it is "clear" that the Department of Justice "must implement policy and training procedures that instill in FBI agents the permissible limits of searching electronic warrant returns in a way that conforms to constitutional requirements"). Indeed, given the not-so-thinly veiled threats of indictment against the former General Counsel of the Labs and her son, it also seems plausible that the Prosecution Team could have coerced the former General Counsel to betray the attorney-client privilege and her fiduciary obligations by providing assistance in identifying documents for the purpose of this motion.

Even absent intentional or malicious conduct on the part of the Prosecution or Filter Teams, any disclosure of privileged materials or information to the Prosecution Team would be a violation of Satary's and the Labs' rights. This Court must assure itself that the attorney and non-attorney members of the Prosecution Team did not have any access to the privileged documents or their substance prior to filing this motion to pierce the attorney-client privilege. Given the substantial overall number of privileged materials at issue here, the near-identical lists of documents between the Prosecution Team's and Filter Team's motions are too similar for this Court to ignore.

At an evidentiary hearing, this Court must ascertain answers to these questions, among others, to determine whether the Prosecution Team impermissibly had access to privileged materials. *See In re United States*, 878 F.2d 157-58; *Holy Land Found.*, 2007 WL 2011319, at *7.

- Who are the members of the Prosecution Team (attorney and non-attorney members) that worked on this motion, including compiling and categorizing the 279 documents?
- What communications (emails/text messages) and discussions were there between Filter Team and Prosecution Team members (attorney and non-attorney members) regarding the privileged materials?[2]

---

[2] These communications should also be provided to Satary and the Labs for review.

6

- What methods did the Prosecution Team use to identify the 279 documents at issue in its motion to pierce the attorney-client privilege and then use to substantively categorize these documents into the 5 examples of allegedly criminal conduct (*see* Doc. 224-1 at 2 n.3, 12-17)?
- Did any member of the Prosecution Team (attorney and non-attorney members) see any of the 279 documents prior to compiling and categorizing them?
- Did any non-member of the Prosecution Team provide input or advice on which of the privileged documents should be identified and/or how they should be categorized?
- Was any member of the Prosecution Team (attorney and non-attorney members) told of the content or potential content of the 279 documents prior to compiling and categorizing them?
- Did any member of the Prosecution Team (attorney and non-attorney members) view the Filter Team's Motion for Authorization filed under seal and/or the list of privileged documents that the Filter Team sought permission to produce to the Prosecution Team?
- Did the members of the Prosecution Team (attorney and non-attorney members) review the non-privileged materials seized from Mr. Satary and the corporate entities prior to compiling and categorizing the 279 documents?[3]

## II.  The Prosecution Team has Failed to Meet Its Burden of Alleging the Crime-Fraud Exception Applies, and this Court Should Deny the Motion.

To pierce the attorney-client privilege, the Prosecution Team must make a prima facie case that a crime or fraud has been committed and that the privileged communication or document was made in furtherance of that alleged crime or fraud. *S. Scrap Material Co. v. Fleming*, No. 01-2554, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003). "Before a district court engages in an *in camera* examination to determine the applicability of the crime-fraud exception, the court 'should require a showing of a factual basis adequate to support a good faith belief by a reasonable person.'" *In re Grand Jury Subpoena*, 419 F.3d 329, 335–36 (5th Cir. 2005) (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)). This factual basis is simply lacking here, and no *in camera* review is warranted.

---

[3] All materials taken from Mr. Satary and the corporate entities were unconstitutionally seized and retained. (See Docs. 199, 201.) The Prosecution Team's use of illegally seized, non-privileged materials as an aid to pierce the attorney-client privilege is also problematic.

7

## A. The Prosecution Team has failed to even attempt to make a prima facie case of crime-fraud against the Labs.

The thrust of the crime-fraud exception is that the client improperly use the attorney-client relationship to further criminal conduct. In its brief, the Prosecution Team identifies Satary's alleged criminal conduct, as evidenced by the indictment, as the sole evidence of criminal conduct to pierce the attorney-client privilege. The Prosecution Team has failed to allege, let alone make a prima facie case, that each client corporate entity, *i.e.* the Labs, sought legal advice to further criminal conduct. As a result, the motion must be denied as to each document in which one of the Labs is the privilege holder.[4]

The crime-fraud exception applies "only when the court determines that the client communication or attorney work product in question was itself in furtherance of the crime of fraud." *S. Scrap Material*, 2003 WL 21474479, at *2 n.3. "[T]he privilege ends when a *client* consults an attorney seeking advice that will promote intended or ongoing criminal activity." *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994) (emphasis added).

"In the attorney-client privilege context, the crime/fraud exception permits disclosure of any communications between the attorney and client if the *client* seeks advice from the attorney in carrying out a crime of fraud. The test is whether the *client's purpose* is the furtherance of a future fraud or crime; it is not enough that a communication merely provides evidence of fraud. However, this *focus on the client's purpose* appears to be driven by the fact that the attorney-client privilege

---

[4] Many documents at issue were taken from one of the various corporate entities—and not from Satary's personal Gmail account. And, many of the documents from Satary's Gmail account were business-related, and not personal, such that one of the Laboratory entities was the privilege holder. In its motion for authorization to produce, the Filter Team has explained that the Bates prefix "KS" indicates the document was from Satary's personal email account and that "HS" indicates the document was taken from one of the corporate entities' accounts. Yet the Prosecution Team has made no accusations against the corporate entity Labs—the client, according to the Government, for any emails labeled HS.

8

is, of course, held by the client and not the attorney." *S. Scrap Material*, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003) (emphasis added); *see also United States v. Dyer*, 722 F.2d 174, 177 (5th Cir. 1983) ("Where *a client* seeks to use an attorney to further a continuing or future crime or fraud the broader public interest in the administration of justice is being frustrated, not promoted." (emphasis added)).

The Prosecution Team thus bears the burden to pierce the privilege for each entity that was the *client* in the attorney-client relationship. Yet the Prosecution Team's motion is devoid of any allegations against any of the corporate entities. The Government's entire argument to apply the crime-fraud exception to the Labs is based on Satary's alleged crimes and that: "communications between the *Defendant* and an attorney to his companies ("Attorney 1") facilitated both the concealment of the illicit kickback agreements the *Defendant* had with his co-conspirators and the *Defendant's* involvement in the criminal enterprise." (Doc. 224-1 at 2 (emphasis added)). In setting forth a factual background, the Prosecution Team explains that "[t]o provide appropriate context for the facts giving rise to application of the crime-fraud exception, it is necessary to first provide background regarding the *Defendant's* criminal conduct." *Id.* at 3 (emphasis added). Said differently, according to the Government, the crime fraud exception applies because of actions Satary himself took in obtaining these communications.

Indeed, the Prosecution Team claims that it has satisfied the first prong of the crime-fraud standard and "shown by a preponderance of the evidence that a crime occurred" based solely on the indictment against Satary—"The grand jury's return of the indictment against the *Defendant* alone meets this requirement." *Id.* at 12 (emphasis added). The Prosecution Team also argues that it has met the second prong because "*Defendant* sought several types of advice from Attorney 1 in furtherance of illegal or fraudulent acts." *Id.* (emphasis added). But there is no such criminal

9

allegation against the Labs, nor is there any allegation that any of the corporate entities sought criminal advice to further a crime.

Where Satary is not the client, the Prosecution Team has not brought forth any evidence or allegations of any individual Lab's crime that would warrant piercing that Lab's attorney-client privilege. To pierce the Labs' privilege would require prima facie evidence of the Labs seeking legal advice to further crime. The Prosecution Team fails to do so as the sole accusations in its brief are based on Satary's alleged criminal intent and the indictment against Satary. No similar arguments are made against the Labs. The Government seems to recognize this by telling the Court that "[t]he focus of the Court's inquiry is on the Defendant's intent." (Doc. 224-1 at 10.) However, the return of an indictment against Satary, an individual, has no evidentiary bearing of criminality by corporate entity Labs, who were not indicted. Thus, any of the Labs' documents, which do not include Satary as a client, cannot be part of the crime-fraud exception.

In fact, a number of these emails do not even include Satary. Instead, they are emails between the General Counsel and employees of the Labs. The Government has not made a prima facie case that these documents were in furtherance of a crime or a fraud. The Prosecution Team cannot rely on an indictment of Satary to show intent to further a crime for emails in which he was not included.

As the Filter Team has already argued to this Court on behalf of the Government in its motion for authorization, Satary is not the client nor privilege holder for any document marked with a "HS" prefix.

> [T]he sole privilege *Defendant* may assert is one he has as an "individual", which here is over his personal Gmail account (i.e., those documents that include "KS" in the Bates prefix) and communications with his "personal attorney," if he can establish such a relationship.
>
> Defendant lacks standing to challenge production of the Labs' documents (i.e., those that include "HS" in the prefix).

10

[Filter Team Reply Brief at 2 (filed under seal) (citations omitted).]

The Filter Team has already set forth the Government's position that any document marked with a prefix HS (Hurricane Shoals), as opposed to KS (Khalid Satary), is a document for which only the Labs can assert privilege. The flipside of this argument is that the Prosecution Team cannot now try and use Satary's conduct and actions to pierce the Labs' privilege. The Government cannot have it both ways.

The Prosecution Team cannot now be allowed to backtrack from that argument and use Satary's alleged criminal intent as the client to pierce the attorney-client privilege of the Labs. The Government cannot be permitted to argue in one motion that the Labs are the client, and Satary has no privilege, and then turn around in another motion and simultaneously argue that Satary is the client and the Labs' privilege can be pierced because of his alleged intent to further criminal conduct. *See United States v. Powers*, 467 F. 2d 1089, 1097, n. 1 (7th Cir. 1972) (Stevens, J., dissenting) (assertions made by the government in a formal prosecution "establish the position of the United States and not merely the views of its agents who participate therein").

While the Filter and Prosecution Teams have, in theory, been separated from each other, both teams represent the Government.[5] The Government cannot be permitted to take diametrically opposing views—on the one hand Satary is not the privilege holder over the Labs documents, and on the other hand, Satary is the privilege holder over the Labs documents and his conduct mandates application of the crime fraud exception— depending on the relief it seeks. This kind of duplicity has been rejected when contrary positions were presented in different federal courts; it can only be rightly assumed two inconsistent statements made by the government in the same federal court are

---

[5] The U.S. Department of Justice chose to conduct its own review of the attorney-client privileged materials in this manner, as opposed to asking for the appointment of a special master.

11

treated similarly. *See United States v. Morgan,* 581 F.2d 933, 937-38 n. 11 (D.C. Cir. 1978); *see also Powers*, 467 F.2d at 1097-98.

As such, the Prosecution Team's motion to apply the crime fraud exception to all documents for which the Government has already argued to this Court that Satary is not the privilege holder, must be denied. The Prosecution Team has failed to make a showing necessary for *in camera* review over any document wherein the Labs are the privilege holder. *See In re Grand Jury Subpoena*, 419 F.3d at 335-36.

> **B. The Prosecution Team's threadbare accusations are untethered from the substance of the documents and are insufficient to make a prima facie case of the crime-fraud exception.**

In its opening brief, the Prosecution Team does not address any individual communication, despite bearing the burden of proving that the communications at issue were created with the intent of furthering criminal conduct. Instead, the Prosecution Team lumps communications together into various groups and makes general allegations about those sets. (*See* Doc. 224-1 at 12-17.) Fifth Circuit case law is clear that "the reach of the crime-fraud exception does not extend to all communications made in the course of the attorney-client relationship," but rather instead is limited to only "those communications made and documents produced in furtherance of the ongoing or future crime or fraud." *In re Grand Jury Subpoena*, 419 F.3d at 344–45. The Prosecution Team's failure to even attempt to meet its burden as to each specific communication at issue provides sufficient grounds to deny the motion. Indeed, the Prosecution Team argues for such a broad application of the crime-fraud exception that there appears to be no limit. Under the Prosecution Team's calculus, any defendant, by virtue of being indicted, would forever forfeit privileged communications with counsel. The Prosecution Team cannot be allowed to sweep in such a broad swath of privileged materials with such minimal discussion of the materials themselves.

12

Satary and the Labs cannot, and should not, be compelled to defend each and every one of the 279 communications at issue when the Prosecution Team has simply shirked its obligations in addressing any individual communication. Were Satary to explain why each communication was a proper exercise of the attorney-client privilege, he would unavoidably be providing privileged communications directly to his prosecutors.[6]

While the Prosecution Team may claim it is at a disadvantage in bringing this motion because it has allegedly not seen the documents, there is no reason that the Filter Team, who has seen the documents, could not have brought this motion. Indeed, in another genetic testing case involving the same members of the Filter and Prosecution Teams, the Filter Team was the entity that brought the motion to pierce the attorney-client privilege. *See United States v. Minal Patel*, No. 19-cr-80181 (S.D. Fla.). The Government's failure to follow that same approach here should not inure to the Prosecution Team's benefit. The Prosecution Team's motion simply lacks any specifics or compelling evidence for any communication at issue that could lead this Court to conclude that the crime-fraud exception applies for that specific communication. Perhaps, the Filter Team could have brought a more substantial motion that included analysis grounded in the actual communications. But ultimately, they did not; and the Prosecution Team's flimsy motion should be denied.

The Prosecution Team's threadbare accusations and conclusory statements are best exemplified by specific examples. The Prosecution Team has identified a number of attorney-

---

[6] Although *in camera* review is unwarranted because of the Prosecution Team's failure to make a prima facie case of crime-fraud for any individual document, were the Court to ultimately review any document *in camera* and want further explanation or information from Satary, he would readily provide it under seal. For example, Satary can provide the context for the communications that indicate why they were sent at that time and what was going on in the background. But Satary is unwilling to proactively do that for each communication at issue in this fishing expedition of a motion and provide his prosecutors with any information that may be used against him.

13

client communications between the Labs' General Counsel and Epstein Becker & Green ("EBG") (the firm currently representing the Labs) as being subject to the crime-fraud exception. (*See* Doc. 224-3 at 5; Doc. 224-4 at 5.) Notwithstanding that this is a serious accusation involving the Labs' law firm, the Prosecution Team makes no reference whatsoever to these communications in its brief. The Prosecution Team fails to explain how these communications would be subject to the crime-fraud exception. Notably, by not discussing these communications, the Prosecution Team avoids addressing that Satary himself is on none of these email communications. Yet somehow, for some unspecified reason, the Prosecution Team asks this Court to pierce the attorney-client privilege between the corporate entity Labs and their outside counsel based on some conduct of Satary, who was not a party to these communications.

It is unclear whether this is even a serious attempt by the Prosecution Team to procure communications or an underhanded effort to disqualify EBG as counsel for the Labs after bringing a (what will prove to be successful) Rule 41(g) motion to return property that details the Government's repeated violations of the Labs' rights. Either way, these communications are emblematic of the deficient approach that the Prosecution Team has taken in its motion and demonstrate that the Prosecution Team has failed to meet its burden to pierce the attorney-client privilege.

The Prosecution Team's sorting of documents into five categories does not add to the factual basis necessary to satisfy its prima facie burden that the crime-fraud exception applies. Even assuming that these five categories identified criminal conduct, there is no connection made between that supposed conduct and the materials in the exhibits. The Prosecution Team fails to explain how the vast majority of these communications themselves fit into these five identified categories of alleged criminal conduct. The handful of examples cited by the Prosecution Team is

insufficient to impute the crime-fraud exception onto the totality of the 279 documents, especially in light of how untethered many of these communications appear to the conduct alleged.

The first category of documents the Prosecution Team identifies in Exhibit A are those items allegedly related to Satary's "concealment of his ownership and control of the SATARY LABS, ALPHA, and NEXUS." (Doc. 224-1 at 13). According to the Prosecution Team, this includes documents related to "fraudulent Medicare applications, the ownership and "organizational structure" of the SATARY LABS, and the "transfer of ownership" process, among other related issues." *Id.* at 12. However, a quick examination shows that the Prosecution Team has flagged documents with the file name "Performance Lab," and no other information on the log would permit a reasonable person to connect the document to the Prosecution Team's category. (Doc. 224-2 at 2-3).

The Prosecution Team has identified documents in Exhibit B supposedly related to "drafting the sham 'marketing' or 'hourly' contracts, getting co-conspirators to sign the sham contracts, or providing invoices pursuant to the sham contracts" for the purpose of "concealing kickback payments." (Doc. 224-1 at 14). Yet, the first three documents on Exhibit B consist of communications that not only do not involve Satary, but are titled "RE: Preparing some responses to Charles from Yesterday's Meeting." (Doc. 224-3 at 2). Nothing in these entries could reasonably be construed as having any relationship to "sham contracts" or "kickback payments." The Prosecution Team has simply not provided a basis to show how the information provided in the privilege logs relates to its assertions of criminal conduct in this particular category of emails. Relatedly, there are documents in Exhibit B, entitled "Re: A Few things we need to take care of." (Doc. 224-3 at 3). Again, the Prosecution Team has made no allegation how these specific emails are relevant to its claims of crime-fraud.

15

Moreover, Exhibit B is full of examples of documents over which the Prosecution Team seeks to invoke the crime-fraud exception wherein the privilege log lines contain minimal information for the Prosecution Team to make that assessment. (The privilege logs were created based on the spreadsheets provided by the Filter Team, so for these documents, that was the only metadata categories that the Filter Team provided.) Approximately 80 of the 133 documents identified in Exhibit B contain only a file date, and no other metadata such as date or email sender or recipient. (*See* Doc. 224-3 at 6-10). How can the Prosecution Team make a prima facie case that the crime-fraud exception applies based merely on the title of a document?[7]

Exhibit C represents the most problematic category for the Prosecution Team, as the Prosecution Team repeatedly fails to demonstrate that the documents identified are purportedly related to "billing for CGx tests without regard to medical necessity" or information regarding "diagnosis codes or LCDs." (Doc. 224-1 at 14-15). In particular, the Prosecution Team asserts that a number of documents—which solely contain the words "Complaint Filed" or "Complaint Received" in the "Email Subject" or "File Name" column—are sufficient to show a relation to billing or diagnosis codes for CGx tests. (Doc. 224-4 at 6-7, 10-11). But laboratories may encounter complaints for any number of reasons, none of which would seemingly be related to the Prosecution Team's category of CGx testing. There are also a large number of documents that reference "compliance" matters. (Doc. 224-4 at 6, 9-10, 15, 17-18). Laboratories may have any number of compliance policies and procedures in place that are unrelated to billing, Medicare, or diagnosis codes. These examples are wholly insufficient to justify the Prosecution Team's allegations that the communications were used to further a crime or fraud. Indeed, it remains to

---

[7] This further calls into question how the Prosecution Team identified and characterized the privileged documents in the first place, *see supra*.

16

be seen how the Prosecution Team was even able to identify these documents as dealing with CGx testing and billing based solely on the information provided—the titles "Complaint" and "Compliance." The Prosecution Team's broad sweep of documents in Exhibit C also includes the documents "CLIO Toxicology Training 2017.pptx," (Doc. 224-4 at 15), and "FW: Violation of the Telephone Consumer Protection Act." (Doc. 224-4 at 8). The Prosecution Team provides no explanation as to the method or manner used to connect these two documents to diagnosis codes, LCDs, or ensuring Medicare would pay for CGx testing.

The Prosecution Team's pattern of failing to connect documents to the alleged crime or fraud continues through the last two exhibits. Exhibit D involves documents related to the "creation, organization, and/or operation of NEXUS." (Doc. 224-1 at 16). Without any explanation whatsoever the Prosecution Team has included nine documents in Exhibit D that reference "Medsymphony." Nowhere in its brief does the Prosecution Team mention this entity or its relationship to NEXUS. For Exhibit E, the documents are supposedly connected to the "use of reference labs" and "contracts that Satary signed with reference labs." (Doc. 224-1 at 16). However, there are documents named "Performance and Lazarus" and "Re: Wellcare letter to CLIO Otogenetics address." (Doc. 224-6 at 2). There is no information provided by the Prosecution Team or in the privilege logs that indicate these documents are related to the use of, or contracts with, reference labs.

## CONCLUSION

For the foregoing reasons, the Prosecution Team's motion should be denied.

Respectfully submitted,

*/s/ Scott R. Grubman*
Scott R. Grubman
Ga. Bar No. 317011
(admitted pro hac vice)
Chilivis Grubman Dalbey & Warner LLP
1834 Independence Square
Atlanta GA 30338
Telephone: (404) 233-4171
sgrubman@cglawfirm.com
*Trial Attorney for Defendant*
*Khalid Ahmed Satary*

*/s/ Richard W. Westling*
Richard W. Westling (#20027)
Epstein, Becker & Green, PC
1227 25th Street, NW, Suite 700
Washington, DC 20037
Tel: 202-861-1868
Fax: 202-861-3504
rwestling@egblaw.com
*Local Counsel for Third Parties*
*Alpha Medical Consulting, Inc.,*
*Clio Laboratories, LLC, Elite Medical*
*Laboratories, Inc., Performance*
*Laboratories LLC, Lazarus Services, LLC,*
*and GNOS Medical Inc.*

*/s/ Melissa L. Jampol*
Melissa L. Jampol
Jeffrey P. Mongiello
Epstein, Becker & Green, PC
875 Third Avenue
New York, NY 10022
Tel: 212-351-4500
mjampol@ebglaw.com
*Counsel for Third Parties*
*Alpha Medical Consulting, Inc.,*
*Clio Laboratories, LLC, Elite Medical*
*Laboratories, Inc., Performance*
*Laboratories LLC, Lazarus Services, LLC,*
*and GNOS Medical Inc.*

Dated: December 13, 2021

## CERTIFICATE OF SERVICE

I certify that on December 13, 2021, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send a copy of the pleading to all parties via email.

/s/ *Richard W. Westling*